At your convenience, Ms. Fulger-Hartwell. Good morning. Jillian Fulger-Hartwell for the defendants, Prospect CharterCARE LLC and Prospect CharterCARE Physicians LLC. There is one issue alone in this case, and that is whether there is sufficient consideration to support the mutual agreement to arbitrate that Mr. Conduragis signed in June of 2014. There is, because continued employment is sufficient consideration under Rhode Island Supreme Court precedent to support an employment contract. And I relied heavily, as you know, on the case of Okun v. National Chain Company. In that case, it's important to note, not only was Mr. Okun's continued employment deemed sufficient consideration to support a change to his commission agreement, but that change to the commission agreement was somewhat retrospective in nature. So the court said in that case, even though Mr. Okun was notified in May that his commission structure was going to change going back to January, that was still okay. When he showed up to work the next day under those terms with full notice that those were the terms he would be working under, that was his acceptance of that unilateral offer of employment. I do not see how the plaintiff can ignore that precedent from the Rhode Island Supreme Court. It's, in fact, been cited by the district court in multiple cases, even cases involving non-compete agreements, which have substantially a greater burden to show consideration, as noted perhaps in the Soto case. The plaintiff will say that the Rhode Island Superior Court case of DeMiguel and Sons v. Barboza holds otherwise, and says that continued employment is not sufficient consideration. That is not dispositive because in DeMiguel, the agreement at issue was a non-compete agreement, and all we need to do is look to this court's decision in Soto v. State Industrial Products, where the court noted the plaintiff in that case tried to use the same exact argument. There was a Puerto Rico case that said continued employment was not sufficient consideration for a non-compete, and the court in Soto said that was not true, that there were considerations at play with a non-compete agreement that were not at play with any other kind of contract, certainly not an arbitration agreement. In addition, under the FAA, it mandates that states treat agreements to arbitrate on the same and equal footing as other agreements, so where a state can disfavor a contract for non-competition, it can't do that for an agreement to arbitrate under federal law. So, you know, to the extent that continued employment is sufficient consideration, and following the precedent of the Royal Supreme Court, the analysis ends there. That's all the court needs, and it doesn't need to go any further. So in your view, we don't have to wrestle with the question of whether we're dealing here with one agreement or two? I agree. Well, no, you're not agreeing. That's the question. You're telling me what your view is. I'm not stating my position at all. But let's assume that you're mistaken and we do have to reach the issue of whether we're dealing with one agreement or two, the letter of employment and the arbitration agreement. Judge McConnell held that they were all one agreement. Do you disagree with that? I apologize for interrupting. I do disagree with Judge McConnell's ruling on that point, and I think that Judge McConnell misapplied the rule of law in looking outside the four corners of the agreement to arbitrate to find an ambiguity in that language where it does not exist within that agreement. Well, why isn't it one agreement? The way it was presented to the employee, it was sequentially numbered. There's one page that's missing, which is disturbing to me, but why wouldn't we consider that one agreement? I think if you look at the text of the letter and the text of the arbitration agreement, it is— specifically incorporates the notion that there are other pieces to the contract. I don't agree with that. I think what the letter says is that there are also other things that you have to sign, specifically. As a condition of employment. The letter does not say as a condition of employment. I don't dispute that there was another agreement that Mr. Condragas had to sign as a condition of employment, but the letter does not state that. It says there are— If he hadn't signed it, he would have been able to continue to be employed just based upon the letter? Well, I don't dispute that that was a condition of his continued employment. I'm not sure the letter says that specifically, but I don't dispute that signing the arbitration agreement was a condition of his continued employment. So I don't dispute that principle. But if you look at the face— Why is it that one agreement? Well, if you look at the face of the letter, you look at the language in those two documents, it's very clear that it's not one agreement. The letter says, hey, you have a new employer, and all the benefits that you had with your old employer are going to continue. We're going to make some changes to your pension, which they do have to give the employees notice of, obviously. And there's this boilerplate at-will language that says, by the way, just like before, you're going to be an at-will employee, and this also means we can change the terms and conditions of your employment. It then says, please sign below to acknowledge your acceptance of the above terms of employment. After that, it says, there are two additional documents you will need to sign. Please see attached, essentially. So even the face of the letter itself does not incorporate the terms of the arbitration agreement into the letter. It says, hey, here are all the conditions of your employment. Sign below for those. And by the way, here's another agreement you also need to sign. When you look at the face of the arbitration agreement, it's very clear that that's a standalone contract. There's nothing in that contract that presents any ambiguity about whether it can be changed, whether it's fully integrated, whether that promise is a binding promise or not. It's got a heading. It's on a separate page. It requires a separate signature. It's very clear in all capital letters at the bottom, you are hereby relinquishing your right to a trial and a jury. Well, what's the point of the numbers? If they're separate agreements, what's the point of it being numbered one through four? I think that the arbitration agreement, although presented with the letter, does not mean and therefore consecutively paginated, does not mean it is a single agreement. What do they mean? What do those numbers mean if this is not a page one through four contract? What they mean is you are receiving four pages. And there's cases that support the proposition that pagination of a document, particularly arbitration agreement and another type of document, does not lead to the conclusion that they are one contract. If there's ambiguity, why would we not construe that against you? There is no ambiguity. This contract is remarkably clear. It doesn't say it can be changed in any way. There's nothing in the four corners of this document that presents any ambiguity. If we disagree with that and think that it is one contract, that it may be illusory because it can be changed at any time. I would say no. Including the arbitration provision. I would say no because continued employment is sufficient consideration to support the agreement, absent anything else. And that's the Rhode Island Supreme Court. The terms of at will. Of course, the language about changing the terms and conditions at any time is really superfluous in this situation because the terms of an at will employment can be changed at any time. Isn't that true? That's true. That's the nature of an at will employment. That is the very nature of at will employment, that the terms and conditions of employment can be changed at any time. That's why I say this language in the letter that says you're going to continue to be an at will employee. It's boilerplate at will employment language. Courts have repeatedly held that the mere at will nature of employment doesn't preclude an employer from entering into an arbitration agreement separately with an at will employee. That's just not supported by the case law. And it certainly, I would not support the proposition that just because you have a letter or a handbook or anything else that's a policy and says we can change it at any time, that that would preclude an employer from ever having a contract with an employee. That would be kind of an astounding principle, I think. So the district court errored when it read the two documents together. The case of Dominic Chetty v. Salter School, which a plaintiff relies on, actually supports the proposition that the indictum of separateness that I just described for you, it's a separate page, it's got a separate heading, it's very clear. Throughout the arbitration agreement, it refers to it as an agreement. It's very clear. It requires a separate signature. All of those things weren't present in Dominic Chetty. And the court suggested had they been present, it would have perhaps held differently. There's simply no ambiguity, as I said, in the arbitration agreement. And it was improper for the district court to try to find that ambiguity out from an extrinsic source. I did cite some cases in my brief for the proposition that the absence of an express exemption from modification. So the absence of a statement that says we can't change this doesn't mean you can change the contract. It's not appropriate to read that implication into a contract. And that's the Axia Media Corp. v. Mass Tech Park case. So simply because of the pagination and the fact that the letter references the arbitration agreement, numerous courts have held that agreements similar to this, with handbooks that reference them or letters that reference them, do not create one contract. And I would rely primarily on Hill v. PeopleSoft USA, Inc., which is the Fourth Circuit 2005 case that I cited in the brief. Thank you. May it please the court. Attorney Richard Sinopi for George Condragas, who is somewhere behind me in this mess of humanity. The case turns, as Judge McConnell ruled, that the letter agreement executed by the parties encompasses other documents, other provisions, as part of a global employment arrangement. But your sister says we don't even have to reach that issue because there is sufficient consideration for the agreement in any event. What's your response to that? To have a valid contract under Rhode Island law, you must have mutuality of obligation. Yeah. In this case, if you accept... I let you continue your employment and you continue working. Why isn't that mutuality? If you accept the plaintiff's position in this case that the Reservation of Rights Clause, which says that the company may change the terms and conditions of employment, including compensation and benefits at any time... Can't a company always do that with an at-will employee? The at-will employee's remedy is simply to quit. I'm focusing, Your Honor, if I may, on the arbitration provision. The arbitration provision is unenforceable because there's no mutuality of obligation, because the employer can change the terms and conditions of that, rescind it, not comply with it, as it sees fit. So your argument is, as I understand it, that even if there's consideration for the letter of employment, that the letter of employment may be valid, but the arbitration agreement will fail? That's correct, Your Honor. There's no mutuality of obligation. And what's the best case you have for that proposition? Your Honor, that would be the Salazar case, if I may. And we don't do a particularly good job on it in our brief describing it, but the Salazar case is remarkably similar to this case. In the Salazar case, you have an employee handbook, which says, by the way, you have to sign an arbitration agreement, which is attached here, too. Just as in our case, we have a letter agreement that says, hey, you have to sign additional documents, including an arbitration agreement. In Salazar, there is a read and receipt document signed with respect to the handbook that says, hey, the terms and conditions of this handbook can be changed at any time. Similarly, the letter agreement signed by the parties says terms and conditions can be changed at any time. The third thing is, as I understand the facts of Salazar, the annexed arbitration agreement is separately executed by the parties. In this case, we have an arbitration agreement also separately executed by the parties. The court in Salazar said what we said here. It says if you can change the terms and conditions of employment at any time, then you can change the terms and conditions of the arbitration agreement. You don't have to comply with it. There's no mutuality of obligation. It's an illusory promise. We will not enforce the arbitration agreement. That also is supported by Rhode Island Black Letter of Rhode Island Law. If I may add, you have the... Excuse me. Was Salazar a case... I'm not familiar with Salazar. Was that a case involving at-will employment? Yes, it was, Your Honor. From what court? New Mexico, Your Honor. If you look at analogous Rhode Island law, such as the Boccola case, Your Honor, the Boccola case says to have a valid contract, you need to have competent parties, subject matter, legal consideration, mutuality of agreement, and mutuality of obligation. And, again, that's what we lack here. The Hulston case goes further and says, look it, if you reserve within the power of one of the parties to not comply or alter what you have agreed to, then it's an illusory promise and it is not enforceable. As the court has indicated, the content of this document says this letter of agreement addresses the pay and benefits with the company in other terms and conditions of employment. It goes on to say you're going to remain employed, you're going to have the same pay and benefits. Then it says, of course, and again, this is important, the company can terminate the relationship at any time for any reason. It can change terms of employment, including pay and benefits, at any time. And then, as my sister said, sign below accepting the above terms and conditions. One of the terms and conditions is we can change the terms and conditions at any time. So you're agreeing to, okay, I understand it, whatever you want, that's what I'm subject to. It then goes on to say right below it, there are two additional documents you have to sign. You have to sign the arbitration agreement and you have to sign the code of conduct. And, of course, those documents are consecutively paginated in the same place, the bottom left-hand corner, as the arbitration, as the signed letter agreement. Then you go further. At the very top of the letter it says, please note, this document requires your signature and return of docs by 6-20-14. That letter agreement is part of a global arrangement which anticipates the execution and return of, includes the additional provisions and additional documents as part of your employment arrangement that is being acknowledged and established in this document. So you have the arbitration agreement that is presented at the same time as the letter agreement. It's referenced in the letter agreement. It's accessed and provided in conjunction with the letter agreement. It's identified as a document that must be signed and returned with the letter agreement. And as my sister says, if you didn't do it, you wouldn't get your employment. It's clearly a term, a condition of employment. More importantly, the arbitration agreement serves no purpose by itself. It says this is the purpose of arbitrating employment disputes. Well, if you don't have a letter agreement establishing the employment arrangement, then you don't even have a purpose for the arbitration agreement. It must be intended, as Judge McConnell said, to be part and parcel a subset of this encompassing global letter agreement establishing the employment arrangement. It's paginated consecutively, as indicated before. And there's no integration clause in either document. Clearly, the letter agreement is not integrated. It says terms and conditions can be changed, added, subtracted. And the arbitration agreement, which is encompassed in that, is silent on that issue. The inference, the ambiguity that exists as to whether this is all one document is, I think, readily apparent. We have two district court judges in Brito and Condo Regis who came to different conclusions on the same identical facts. Mr. Sinopoli, that's an argument that has troubled me. So you want us to lay down as a principle that if some judge somewhere makes a mistake and comes to a conclusion different than another judge, there's automatically an ambiguity in the contract they're considering? Absolutely not. You can't find a case anywhere, even in New Mexico, that says that. Absolutely not, Your Honor. And I'm sorry, that's not what I was intimating. Yeah, but that's what you're saying. You're saying, well, look, you had two judges. They considered essentially the same contract. They came to different conclusions. Must be ambiguous. I didn't say much, Your Honor. I said that's evidence that there's an ambiguity. Are these evidence of ambiguity? It may be evidence that one of them is right and one of them is wrong. Additionally, on that issue of ambiguity, it's black letter law, obviously, that any ambiguity is construed against the drafter. With contracts of adhesion, take it or leave it contracts such as this, it is heavily construed against the drafter. If we determine that the arbitration provision is a standalone contract, do you disagree that under Rhode Island Supreme Court law that continued employment is not valid consideration? Yes, I would argue that when faced with that issue, the Rhode Island Supreme Court may, in fact, adopt the trend that is currently out there that, you know, at will employment, as Judge Gibney suggested in 1985. Her decision, by the way, in Miguel in 1985 was four years after the Okun decision. But Okun is the Supreme Court with all respect to Judge Gibney. Correct, Your Honor. But doesn't Okun decide the issue? To the extent that Okun is still good law, it suggests certainly in the context of... But is Okun still good law? Are you saying it's not? I mean, it hasn't been overturned. In the context of whether it's sufficient consideration for modification of a commission, here we have a situation where you want it to be sufficient consideration to waive a constitutional right to jury trial. And again, as Judge Gibney indicated, it's kind of illusory because the employer is really not changing its position. What is it agreeing to? Continued employment? There's no continued employment. They could end it at any time. It's illusory. I would argue that Okun is certainly still good law for the issue of modification of a commission of an existing employee. Whether it would be followed, given the current trend at the current time, I think is more of an open question, Your Honor. Particularly given Judge Gibney's decision and also, I think, Vidal, the Defante's decision, Vidal suggested that continued employment was not enough in a consideration in a non-compete situation. Again, a little different than this. I think my time's up. I just would like to say that, real quickly, that as far as the employee handbook is, I know it's not officially part of the record in this case, but there is case law in the Fourth, Sixth, Seventh, and Eleventh Circuits, which provide that matters in pending proceedings can be considered by the court, take judicial notice if they're not in dispute. My sister has not disputed that the handbook in Brito, which is part of the record in our next argument, is the same handbook. And that handbook says that prospect explicitly states that it reserves the right to revise, modify, delete, or add any and all policies, procedures, work rules, or benefits stated in the handbook or in any other document except for the policy of at-will employment. Thank you. Thank you.